UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, MADELINE KRASNO, and RYAN HARTKOPF,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>LAWRENCE A. TABAK, in his official capacity as Acting Director of the Institutes of Health, and XAVIER BECERRA, in his official capacity as Secretary of the U.S. Department of Health and Human Services,<br><br>　　　　　Defendants. | Civil Action No. 21-2380 (BAH) |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs write to respectfully notify this Court of the recent decision in *Garnier v. O'Connor-Ratcliff*, Nos. 21-55118, 21-55157, 2022 WL 2963453 (9th Cir. July 27, 2022) (attached as Exhibit A).

In *Garnier*, the Ninth Circuit held that two members of a public school district's board of trustees violated the First Amendment by blocking constituents from their social media accounts. The court first held that the trustees' actions were subject to First Amendment scrutiny, because they were acting under color of state law when they operated social media accounts in their official capacities. Ex. A at 33–34. The court then determined that the trustees' Facebook and Twitter accounts were public forums, *id.* at 38, and that the trustees' actions violated the First Amendment, *id.* at 46.

First, as relevant here, the Ninth Circuit concluded that the trustees' social media accounts were open designated public forums at the time they blocked their constituents. The court began

from the premise that social media sites "are fora inherently compatible with expressive activities." Ex. A at 36. In concluding that the comment sections of the trustees' social media accounts functioned as open public forums, the Ninth Circuit rejected the trustees' assertion that they "intended their social media pages to be a 'one way' channel of communication," not a forum for speech by members of the public. *Id.* Emphasizing that "what matters in forum analysis 'is what the government actually does—specifically, whether it consistently enforces the restrictions on use of the forum that it adopted,'" *id.* (quoting *Hopper v. City of Pasco*, 241 F.3d 1067, 1075 (9th Cir. 2001)), the Ninth Circuit noted that the trustees' social media accounts "were open and available to the public without any restriction on the form or content of comments," and that the trustees did not clearly define or consistently enforce any limits on the kinds of comments that could be made in the forums. *Id.* It was only after they effectively banned any verbal comments on their pages (by limiting interaction to non-verbal reaction icons) that the trustees exercised sufficient "clear and consistent control" over the forum to make it a limited public forum. *Id.* at 38 (quoting *Hopper*, 241 F.3d at 1080) .

Second, the Ninth Circuit concluded that the trustees' decision to block their constituents indefinitely violated the First Amendment. The trustees had argued that their blocking of the two plaintiffs was a viewpoint-neutral way to prevent the plaintiffs from "spamming [them] repetitively" and thus, according to the trustees, interfering with the ability of others to read the original post or make comments of their own. Ex. A at 39. Although the court doubted the trustees' claim that they were not motivated by viewpoint discrimination, it found it unnecessary to decide the issue because it concluded that the blocking violated the First Amendment even if viewed as a "time, place, and manner" restriction. *Id*. The court held that the blocking violated even this lower standard of First Amendment scrutiny because the trustees' claimed interest in preventing

"disruption" was unsubstantiated in the context of social media pages, *id.* at 41–43, and because blocking the plaintiffs entirely restricted substantially more speech than necessary to further the trustees' claimed interests, *id.* at 43–46.

The reasoning in *Garnier* strongly supports Plaintiffs' arguments in this case. As in *Garnier*, the NIH Facebook Page and Instagram Account are inherently compatible with speech, and the accounts' comment sections are generally open to the public for comment. Pls. Br. 23–26, ECF No. 30-1; Pls. Reply 9, 11–12, ECF No. 35. *Garnier* also confirms that this Court should analyze the nature of the comment threads based on the NIH's practice in operating them, not the NIH's own statements of intent or unenforced comment guidelines. Pls. Br. 26–27; Pls. Reply 13–19. Further, as Plaintiffs have explained, the NIH's invocation of disruption or distraction as a justification for its expansive keyword blocking practice is unconvincing in light of the lack of evidence of actual disruption. *See* Pls. Br. 37–38; Pls. Reply Br. 19–20. Finally, just as the constituents' blocking in *Garnier* burdened substantially more speech than necessary, so too does the NIH's prior restraint on all comments containing two dozen words and phrases. *see* Pls. Br. 38–39; Pls. Reply 20–22.

                Respectfully submitted,

                /s/ *Stephanie Krent*
                Stephanie Krent, *pro hac vice*
                Alyssa Morones, *pro hac vice*
                Katherine Fallow, *pro hac vice*
                Jameel Jaffer (MI0067)
                Knight First Amendment Institute
                 at Columbia University
                475 Riverside Drive, Suite 302
                New York, NY 10115
                (646) 745-8500
                stephanie.krent@knightcolumbia.org

                *Counsel for Plaintiffs*

      /s/ *Caitlin M. Foley*
Caitlin M. Foley, *pro hac vice*
Animal Legal Defense Fund
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
(707) 795-2533 ext. 1043
cfoley@aldf.org

Christopher A. Berry (Bar ID CA00106)
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, CA 94931
(707) 795-2533 ext. 1041
cberry@aldf.org

*Counsel for Plaintiffs Madeline Krasno and Ryan Hartkopf*

  /s/ *Asher Smith*
Asher Smith, *pro hac vice*
People for the Ethical Treatment of Animals
1536 16th Street NW
Washington, DC 20036
(202) 483-7382
AsherS@petaf.org

*Counsel for Plaintiff People for the Ethical Treatment of Animals*

August 16, 2022