**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**People for the Ethical Treatment of Animals, Madeline Krasno, and Ryan Hartkopf,**

Plaintiffs,

v.

**Lawrence A. Tabak, in his official capacity as Director of the National Institutes of Health, and Xavier Becerra, in his official capacity as Secretary of the U.S. Department of Health and Human Services,**

Defendants.

Civil Action No. 21-cv-2380 (BAH)

**MEMORANDUM IN RESPONSE TO SHOW CAUSE ORDER**

Defendants respectfully respond to the Court's September 30, 2024, Minute Order directing the parties to show cause why the Proposed Order accompanying Plaintiffs' motion for summary judgment should not be entered in the wake of the D.C. Circuit's remand of this case. As explained below, the Court need not enter that Proposed Order to comply with the mandate rule, nor should it, as the proposed order sweeps more broadly than is appropriate.

The D.C. Circuit held that certain, specific restrictions imposed by the National Institute of Health ("NIH") on comments made on its Facebook and Instagram pages were unlawful. In particular, NIH prohibited off-topic comments on its Facebook and Instagram pages, and implemented that prohibition in part through specific keyword filters concerning animal testing. The D.C. Circuit concluded that, in light of the record before it, those filters were unreasonable insofar as they were used to implement NIH's off-topic comment policy. The court did not, however, hold that those specific filters (or any other filters) may never be permissible. The court

did not foreclose the possibility that a version of those filters may be justified if, for example, they are supported by a different rationale or a better record. And the court did not speak to the lawfulness of any other type of content moderation action aside from filtering, such as manual moderation.

Following the D.C. Circuit's decision, NIH deleted the offending filters, thus addressing any concrete injuries established by Plaintiffs in this case. Plaintiffs' Proposed Order, however, would do more than require NIH to delete those filters (which it has already done). It would also (i) broadly "enjoin[]" NIH "from blocking, hiding, deleting, or filtering comments on" NIH's Facebook and Instagram pages "on the basis that they advocate for animal rights or use phrases associated with animal rights advocacy" (the "Future Action Injunction") and (ii) declare that NIH's "practice of blocking keywords associated with animal rights advocacy on" its Facebook and Instagram pages "is unconstitutional," without defining what, in particular, the alleged NIH "practice" entails (the "Legal Statement").

The Court need not, and should not, adopt Plaintiffs' Proposed Order. To start, nothing in the D.C. Circuit's decision requires the Court to adopt that order. The D.C. Circuit simply "h[e]ld that NIH's 'off-topic' restriction, as implemented through its keyword filters, is not reasonable" under the First Amendment, and "direct[ed] entry of summary judgment in favor of the appellants." *People for the Ethical Treatment of Animals v. Tabak*, 109 F.4th 627, 630-38 (D.C. Cir. 2024). Under the mandate rule, this Court is thus obligated only to enter summary judgment for Plaintiffs; it need not issue any other remedy, much less all of the remedies in the Proposed Order. Moreover, the Court should not enter the Proposed Order because it sweeps more broadly than is appropriate in several respects. First, because NIH has already deleted the keyword filters at issue, there is no need for the Court to order the agency to do so to remedy any

imminent injury. Second, equitable relief must be limited to conduct that both injures the plaintiff *and* is found unlawful. Here, the Proposed Order's Future Action Injunction—which targets unspecified future actions against unspecified future comments—is not needed to address the only NIH conduct that allegedly injured Plaintiffs and that the D.C. Circuit found unlawful: the implementation of NIH's off-topic comment policy through the use of certain, specific keyword filters. Third, to the extent the Proposed Order's Legal Statement—which vaguely references NIH's alleged "practice of blocking keywords associated with animal rights advocacy"— refers to more than the off-topic comment policy, as implemented through the precise keyword filters at issue here, that provision is likewise overbroad. Aside from its overbreadth, the Proposed Order is also impermissibly vague. The Future Action Injunction prohibits NIH from taking actions against comments that "use phrases associated with animal rights advocacy"—without defining what it means for a phrase to be "associated with animal rights advocacy."

Instead of adopting the Proposed Order, the Court should do only what the D.C. Circuit directed: enter judgment for the Plaintiffs. If NIH were to adopt some variation of the relevant filters in the future—which it has expressed no imminent intention of doing—Plaintiffs could challenge those terms in a new lawsuit, and a court may assess their lawfulness based on the rationale and evidence NIH uses to justify them.

## BACKGROUND

On September 9, 2021, Plaintiffs brought suit, challenging certain keyword filters NIH adopted for its Facebook and Instagram pages (the "Pages"). *See* Compl. ¶¶ 2, 57; *Tabak*, 109 F.4th at 631 (Plaintiffs "sued NIH in district court, alleging that NIH's use of keyword filters violated their First Amendment rights"); *id.* at 636 (Plaintiffs "focused solely on the

constitutionality of the off-topic restriction as implemented by the keyword filters").[1] Plaintiffs claimed that those filters were unconstitutional because the Pages are public forums and thus the filters were subject to (and could not survive) strict scrutiny. *See* Compl. ¶ 3; Pls.' MSJ at 23-27. Plaintiffs also claimed that even if the Pages were not public forums, the relevant filters were still unconstitutional because they discriminated based on viewpoint and were unreasonable. *See* Compl. ¶ 80; Pls.' MSJ at 28-33, 39-40.

The parties filed competing summary judgment motions, and the Court ultimately issued judgment for NIH. The Court concluded that the Pages are not public forums, and thus the relevant filters simply had to be (and were) viewpoint neutral and reasonable. On appeal, the D.C. Circuit disagreed with the district court's reasoning in part, and reversed. The D.C. Circuit agreed that the Pages are not public forums and that NIH may therefore impose content-based restrictions on those Pages. See Tabak, 109 F.4th at 633-36. The court concluded, however, that the relevant filters were not reasonable based on their stated justification: to enforce NIH's prohibition on off-topic comments on NIH's social media pages. *See id.* at 636. The D.C. Circuit offered several reasons in support. First, the court stated that, based on the record, it appeared that the relevant filters would exclude many on-topic posts because "a significant portion of NIH's posts are about research conducted on animals." *Id.* at 637. Second, the court noted that although a prohibition on "off-topic comments" is generally acceptable, *see id.* at 636 ("NIH's off-topic restriction furthers . . . permissible objective[s]"), NIH did not provide an adequate standard for determining "what is considered on-topic and what is considered off-topic," *id.* at 636. Thus, it was difficult to determine the extent to which the filters really did exclude off-topic comments. *See id.* Third, the court stated that the relevant filters were "inflexible and

[1] Internal citations and quotation marks are omitted throughout this brief unless otherwise stated.

unresponsive to context" because there were no safeguards for when those filters captured on-topic comments; *e.g.*, NIH did not "turn off its filters when it post[ed] content that [was] likely to make certain keywords relevant."[2] *Id.* at 638. The court thus held that the relevant filters were unreasonable insofar as they were mechanisms for implementing NIH's off-topic comment policy. *See id.* at 630 ("we hold that NIH's 'off-topic' restriction, *as implemented through its keyword filters*, is not reasonable in light of the purpose of the forum and is therefore unconstitutional" (emphasis added)). It "direct[ed] entry of summary judgment in favor of" Plaintiffs, but did not require the Court to enter any particular remedy. *Id.* at 638.

After the D.C. Circuit's mandate issued, the Court issued a Minute Order asking the parties to show cause "why plaintiffs' proposed order . . . which accompanied their" summary judgment motion "should not be entered in compliance with the D.C. Circuit's" decision." 9/30 Minute Order. That Proposed Order includes four provisions:

> ORDERED that Plaintiffs' motion for summary judgment is GRANTED;
>
> ORDERED that Defendants' practice of blocking keywords associated with animal rights advocacy on the NIH Facebook Page and NIH Instagram Account is unconstitutional [the "Legal Statement"];
>
> ORDERED that Defendants must remove the keywords described in paragraph 58 of the parties' joint stipulation, ECF. No. 28, from any keyword blocking or filtering list associated with the NIH Facebook Page and NIH Instagram Account; and
>
> ORDERED that Defendants are enjoined from blocking, hiding, deleting, or filtering comments on the NIH Facebook Page and NIH Instagram Account on the basis that they advocate for animal rights or use phrases associated with animal rights advocacy [the "Future Action Injunction"].

---

[2] Although the court stated that the relevant filters appeared to "skew[] sharply against the appellants' viewpoint," it declined to address whether that alone constituted unlawful viewpoint discrimination. *Tabak*, 109 F.4th at 638 ("We . . . do not separately address whether the specific keywords used to implement the off-topic rule are, by themselves, viewpoint discriminatory.").

NIH does not object to the Court entering judgment for Plaintiffs (the Proposed Order's first prong) and it has already removed the keywords described in paragraph 58 of the parties' joint stipulation (the Proposed Order's third prong).

**DISCUSSION**

The Court need not and should not enter the Proposed Order, at least in full. Instead, it should simply enter judgment for Plaintiffs.

1. The D.C. Circuit's decision in this case does not obligate the Court to adopt Plaintiffs' Proposed Order, at least in full. Under the "mandate rule," district courts cannot "reconsider[] issues that have already been decided in the same case" by an appellate court. *Am. Council of Blind v. Mnuchin*, 977 F.3d 1, 5 (D.C. Cir. 2020). The mandate rule "is limited to issues that were decided either explicitly or by necessary implication—[t]he mere fact that [an issue] could have been decided is not sufficient to foreclose the issue on remand." *U.S. ex rel. Dep't of Lab. v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997). Here, the D.C. Circuit did not decide, "either explicitly or by necessary implication," that the Court must enter Plaintiffs' Proposed Order in full. The D.C. Circuit simply concluded that NIH's off-topic comment policy, as implemented by the relevant filters, was unlawful, and it then "direct[ed] entry of summary judgment in favor of [Plaintiffs]." *Tabak*, 109 F.4th at 638. Thus, at most, the D.C. Circuit's decision requires the Court to issue a judgment for Plaintiffs. It does not require the Court to adopt the remaining prongs of the Proposed Order, including the request for an injunction against hypothetical, future keywords.

2. In any event, the Court should not adopt the Proposed Order in full. Generally, equitable relief must be limited to conduct that (i) injures the plaintiff and (ii) is found unlawful. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A

plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("the scope of injunctive relief is dictated by the extent of the violation established"). Here, the Future Action Injunction—which would prevent NIH from "blocking, hiding, deleting, or filtering comments on the NIH Facebook Page and NIH Instagram Account on the basis that they advocate for animal rights or use phrases associated with animal rights advocacy"—is overbroad. To start, Plaintiffs have identified no specific, future actions NIH will take against comments relating to "animal rights advocacy," nor have they established that they will be injured by those unspecified actions.

Regardless, the D.C. Circuit did not hold that *any* action by NIH against *any* comments "on the basis" of their connection to animal rights advocacy is unlawful. *See supra* at 4-5. The D.C. Circuit's decision did not even address the lawfulness of any content moderation action outside of keyword filtering, such as manual moderation. *See id.*; *Tabak*, 109 F.4th at 636 (Plaintiffs "focused solely on the constitutionality of the off-topic restriction as implemented by the keyword filters. We therefore examine only that restriction."). Additionally, even with respect to keyword filters, the court merely held that certain *specific* filters were unreasonable because, based on the record before the court, they could not be justified as mechanisms for enforcing NIH's off-topic comment policy. *See supra* at 4-5; *Tabak*, 109 F.4th at 638 ("NIH's off-topic restriction, *as currently presented*, is unreasonable" (emphasis added)). The court did not rule out the possibility that, in the future, the relevant filters (or comparable filters) could be justified based on a different rationale altogether, or based on a more developed off-topic comment policy and a stronger evidentiary record. The Future Action Injunction is therefore overbroad.

Further, the Proposed Order's Legal Statement—that NIH's "practice of blocking keywords associated with animal rights advocacy on the [Pages] is unconstitutional"—is potentially overbroad as well. It is unclear what Plaintiffs mean by "[NIH's] practice of blocking keywords" relating to animal rights advocacy, but to the extent that phrase covers more than NIH's off-topic comment policy as implemented by the specific filters at issue here, the statement is not justified by the D.C. Circuit's decision.

Finally, the Proposed Order is also ambiguous. Under the Federal Rules, "[e]very order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Here, the Future Action Injunction does not "describe in reasonable detail" the precise NIH actions that it restrains. That injunction would prevent NIH from taking content moderation actions against comments "on the basis that they advocate for animal rights or use phrases associated with animal rights advocacy." It is unclear, however, what it means for a phrase to be "*associated* with animal rights advocacy." Does it have to be a phrase that expressly refers to animal rights, and if so, how express must the reference be? If, on the other hand, the injunction covers any phrase used often by animal rights advocates, regardless of its content, then how often must the phrase be used by those advocates in order to qualify? The Proposed Order provides no answer to these questions (and others), which would make it difficult for NIH to ensure its compliance with the injunction. Accordingly, the Proposed Order is impermissibly vague.

3. Rather than adopt the Proposed Order, the Court should simply issue judgment for Plaintiffs. Given that NIH has already deleted the relevant filters, nothing further is needed to address any non-speculative injuries established by Plaintiffs. *See supra* at 6-7. If NIH were to

adopt comparable filters in the future based on a different rationale and different record, or to engage in some other content moderation action potentially covered by the Proposed Order, Plaintiffs could bring a new suit challenging those filters or actions. A court could then evaluate those filters or actions in light of the arguments and evidence NIH used to justify them. The Court, however, need not, and should not, needlessly enjoin those hypothetical filters and actions now.

Dated: October 7, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

*/s/ Kuntal Cholera*

KUNTAL CHOLERA
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Kuntal.Cholera@usdoj.gov

*Attorneys for Defendants*