**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, MADELINE KRASNO, and RYAN HARTKOPF, <br><br> Plaintiffs, <br><br> v. <br><br> LAWRENCE A. TABAK, in his official capacity as Acting Director of the Institutes of Health, and XAVIER BECERRA, in his official capacity as Secretary of the U.S. Department of Health and Human Services, <br><br> Defendants. | Civil Action No. 21-2380 (BAH) |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO SHOW CAUSE ORDER**

The Court of Appeals ruled in favor of Plaintiffs' First Amendment claim in this case, concluding that NIH's practice of blocking certain keywords associated with animal advocacy was unreasonable and "skew[ed] sharply against the appellants' viewpoint." *People for the Ethical Treatment of Animals v. Tabak*, 109 F.4th 627, 638 (D.C. Cir. 2024). Having prevailed on their claim, Plaintiffs are now entitled to the declaratory and injunctive relief they initially requested when filing their motion for summary judgment. ECF No. 30-2. As discussed below, Plaintiffs' requested declaratory and injunctive relief is within the Court's discretion to grant and is entirely appropriate under the traditional factors governing equitable relief. Tellingly, NIH did not object to any of the relief requested in Plaintiffs' Proposed Order at any point over the course of this litigation—until its response to the Court's Order to Show Cause, *see* NIH Br., ECF No. 52. NIH's belated objections to Plaintiffs' Proposed Order, however, are meritless.

In particular, NIH's argument that Plaintiffs are not entitled to injunctive relief is wrong.[1] NIH asks this Court not to prohibit it from blocking the keywords at the heart of this case, *see* Joint Stip. ¶ 58, ECF No. 28, on the basis of an unsupported assertion that it has "already removed" the relevant keywords from its keyword blocking lists. *See* NIH Br. 6. NIH argues that it should be free to block the same or similar keywords in the future, suggesting that Plaintiffs could remedy any constitutional violations by filing a second lawsuit. *Id.* at 9. But that position ignores the impact of the Court of Appeals' ruling that NIH's use of keyword blocking is unconstitutional, and, if accepted, would unduly burden Plaintiffs' free speech rights. NIH censored Plaintiffs' speech for nearly three years during the pendency of this lawsuit, and now that Plaintiffs have prevailed in the Court of Appeals, they should not be required to play "whack-a-mole" in order to vindicate their First Amendment rights. This Court should firmly reject NIH's arguments and enter Plaintiffs' Proposed Order in full.

## I.      The Court should grant Plaintiffs' proposed declaratory relief.

Plaintiffs are entitled to a declaration that NIH's "practice of blocking keywords associated with animal rights advocacy on the NIH Facebook Page and NIH Instagram Account is unconstitutional." ECF No. 30-2. This type of equitable relief is common, and eminently reasonable given the Court of Appeals' ruling for Plaintiffs on their First Amendment claim. *See, e.g.*, *Zukerman v. U.S. Postal Serv.*, 64 F.4th 1354, 1366–67 (D.C. Cir. 2023) (describing availability of, and "important functions" served, by declaratory relief); *Mahoney v. U.S. Cap. Police Bd.*, No. 21-2314 (JEB), 2024 WL 2252178, at *11 (D.D.C. May 17, 2024) ("Having determined that Defendants' prohibition violates the First Amendment, the Court will grant [the plaintiff's] demand for declaratory relief."), appeal docketed 24-5207 (D.C. Cir. Sept. 13, 2024).

---

[1] NIH does not object to the Court entering judgment for Plaintiffs. *See* NIH Br. 3.

NIH argues that the language of Plaintiffs' proposed declaratory relief is "potentially overbroad . . . to the extent that phrase covers more than NIH's off-topic policy as implemented by the specific filters at issue here," NIH Br. 8, but the text of the proposal is clear: it refers to the practice at the heart of this dispute and ruled on by the Court of Appeals. *See* Joint Stip. ¶ 58 (describing NIH's keyword blocking); *Tabak*, 109 F.4th at 636 (describing NIH's practice as treating "words related to animal testing" as "categorically off-topic" (cleaned up)).

To the extent that NIH objects to this declaratory relief because it believes it may in the future block the keywords at issue in this case—or substantially similar ones targeting speech critical of animal testing—as a means to "implement" another of its content moderation policies, NIH Br. 1–2, 7, it is wrong. NIH bore the burden to demonstrate the constitutionality of its keyword blocking. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."). Although Plaintiffs' opening brief in this case pointed to a number of possible interests NIH might assert, *see* Pls.' MSJ Br. 30–31, 36–37, ECF No. 30-1, NIH chose to defend its conduct on the basis of its off-topic rule, NIH MSJ Br. 30, ECF No. 31-1. NIH shouldn't be permitted to take an additional bite at the apple by conjuring up new justifications for a practice that the Court of Appeals has already found to be unconstitutional. *Cf. Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931) ("Public policy dictates that there be an end to litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.").

## II.   The Court should grant Plaintiffs' proposed injunctive relief.

Plaintiffs propose two forms of injunctive relief. First, Plaintiffs ask the Court to order that NIH "must remove the keywords described in paragraph 58 of the parties' joint stipulation, ECF

No. 28, from any keyword blocking or filtering list associated with the NIH Facebook Page and NIH Instagram Account." ECF No. 30-2. Second, Plaintiffs ask the Court to enjoin NIH "from blocking, hiding, deleting, or filtering comments on the NIH Facebook Page and NIH Instagram Account on the basis that they advocate for animal rights or use phrases associated with animal rights advocacy." *Id.* Both requests are warranted in this case.

Plaintiffs' requests to enjoin NIH's use of the keywords described in paragraph 58 of the parties' joint stipulation, as well as similar keywords associated with animal rights advocacy, are amply justified under the four factors courts consider when weighing requests for permanent injunctions. *See Mahoney*, 2024 WL 2252178, at *11 (outlining factors); *ACLU v. Mineta*, 319 F. Supp. 2d 69, 87 (D.D.C. 2004) (similar). First, there is no doubt that Plaintiffs would suffer irreparable injury in the absence of an injunction. The loss of First Amendment freedoms "constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 385 (D.D.C. 2020). For the same reason, legal remedies are insufficient here. *See Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) ("[M]onetary damages are inadequate to compensate for the loss of First Amendment freedoms."); *Barrett v. Premo*, 101 F. Supp. 3d 980, 998 (D. Or. 2015) (similar). Finally, the balance of hardships and public interest tilt sharply in favor of Plaintiffs. Plaintiffs have a right to communicate with NIH and those who view its social media pages, and the public has an interest in hearing that speech. On the other hand, NIH has no interest in maintaining a keyword blocking practice that "defies common sense," *Tabak*, 109 F.4th at 637, and "skews sharply against the [] viewpoint . . . that the agency should stop funding animal testing," *id.* at 638. *See Turner*, 502 F. Supp. 3d at 386 ("[G]overnment actions in contravention of the Constitution

are always contrary to the public interest." (internal citations omitted)); *Mahoney*, 2024 WL 2252178, at *12.

Although the second request for injunctive relief would extend beyond the keywords initially identified by Plaintiffs, *see* Joint Stip. ¶ 58, it is necessary to eliminate the threat that NIH will evade the Court of Appeals' decision by adopting a different "version of those filters" in the future. *See* NIH Br. 2, 7, 9. Very little in the Court of Appeals' opinion turned on the precise animal testing-related words blocked by NIH. If NIH replaced its current list of blocked keywords with "beagles," "zebrafish," "maim," "horrific," and "#endanimalabuse," its keyword blocking practice would still fail to "articulate some sensible basis for distinguishing what may come in from what must stay out." *Tabak*, 109 F.4th at 636 (quoting *Minn. Voters All. v. Mansky*, 585 U.S. 1, 16 (2018)). Its keyword blocking practice would still fail to be based on "any definition of 'off-topic' . . . to guide either NIH's social media moderators or the public," *id.* at 637; it would still be "inflexible and unresponsive to context," *id.* at 638; and it would still "inappropriately censor criticism [and] exposure of governmental actions," *id.* To ensure that NIH does not misinterpret the Court of Appeals' opinion and attempt an end-run around its constitutional obligations, this Court should enjoin NIH from blocking keywords associated with animal advocacy that are not contained in paragraph 58 of the parties' joint stipulation. *See, e.g.*, *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435 (1941) ("A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past.").

NIH raises four arguments in response to Plaintiffs' request for injunctive relief, but none is persuasive. First, NIH argues that Plaintiffs do not need injunctive relief to remedy any

"imminent injury" on the basis of its counsel's unsupported assertion that NIH "already removed" the relevant keywords. NIH Br. 3, 6, 8. But even if NIH had submitted actual evidence to support that claim, injunctive relief is still necessary. NIH has not disclaimed the ability or intent to reinstate the same or similar keywords; it notes only that it has not yet "expressed" an "imminent intention" to do so, *id.* at 3, and indeed, has suggested that it may block these or "comparable" keywords "based on a different rationale," *id.* at 7, despite the Court of Appeals' decision. Plaintiffs, who routinely comment on NIH's social media pages to advocate for an end to animal testing, *see* Joint Stip. ¶¶ 62–90, therefore risk being censored absent an injunction. *See, e.g.*, *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (explaining that there is a "credible threat of enforcement" giving rise to standing to seek declaratory and injunctive relief where a plaintiff "has been subject to past enforcement" and the defendant "has not disavowed future enforcement" (internal quotations omitted)); *cf. Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (describing in context of mootness that voluntary cessation of wrongful activity is not enough unless the defendant's conduct has "completely or irrevocably eradicated the effects" of the wrongful activity (cleaned up)). After over three years of litigation, NIH's say-so should not be the only form of relief offered to Plaintiffs.

Second, NIH argues that injunctive relief would be "overbroad" to the extent that it suggests NIH cannot suppress animal advocacy through manual content moderation, NIH Br. 7, but it is simply incorrect to suggest that the Court of Appeals' opinion has nothing to say about content moderation tools other than keyword blocking. Although the Court of Appeals did not base its ruling on viewpoint discrimination, the court expressed concern about the viewpoint-based "skew[]" of NIH's content moderation and emphasized that "[t]he government should tread carefully when enforcing *any speech restriction* to ensure it is not viewpoint discriminatory and

does not inappropriately censor criticism or exposure of governmental actions." *Tabak*, 109 F.4th at 638 (emphasis added). The Court also concluded that it was unreasonable to "consider words related to animal testing categorically 'off-topic,'" *id.* at 636, especially in light of the "substantial portion" of NIH posts that "directly depict animals or discuss research conducted on animals," *id.* at 636–37, as well as NIH's failure to define "the line between off-topic and on-topic," *id.* at 637. Any moderation policy, whether implemented through keyword blocking or otherwise, that maintains these infirmities would be inconsistent with the Court of Appeals' opinion.[2]

Third, NIH's suggestion that this injunction is "ambiguous" because it cannot tell "what it means for a phrase to be '*associated* with animal advocacy,'" NIH Br. 8, is hardly persuasive. "[A] person of ordinary intelligence could reasonably know what is prohibited" by Plaintiffs' proposed injunction. *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 791 (8th Cir. 2004) (citing *Schenk v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 383 (1997)). NIH is the agency that adopted the keywords at issue in this case precisely because it considered comments related to animal testing "categorically off-topic." *Tabak*, 109 F.4th at 637; NIH MSJ Br. 2 (explaining that the filters were adopted in response to "comments regarding animal testing found on the Pages"); *id.* at 7 (same). Its own conduct and briefing show that it "reasonably know[s] what is prohibited" by an injunction preventing it from censoring keywords on the basis that they are "associated with animal advocacy."

Finally, as with Plaintiffs' requested declaratory relief, NIH argues that Plaintiffs' request for injunctive relief is overbroad because the blocked keywords and "comparable" ones may be

---

[2] To the extent that the Court concludes that the language of the injunction should be limited to the use of keyword blocking, Plaintiffs propose the following language for the fourth part of the Proposed Order: "ORDERED that the NIH is enjoined from blocking keywords on the NIH Facebook Page and NIH Instagram Account on the basis that those keywords advocate for animal rights or are associated with animal rights advocacy."

constitutional if "justified based on a different rationale altogether, or based on a more developed off-topic comment policy and a stronger evidentiary record." NIH Br. 7. This argument is both wrong and irrelevant. It is wrong because, as discussed above, NIH lost this case. It cannot now restart the clock, banning the same or substantially similar keywords relating to animal testing and forcing Plaintiffs into a second lawsuit, this time trying out a different rationale or putting forward slightly different evidence that was available to it in this case. Injunctive relief should issue to prevent NIH from forcing Plaintiffs into that game of whack-a-mole. *Cf. Baldwin*, 283 U.S. at 525.

This argument is also irrelevant because if, in the future, NIH develops reason to believe that adding a word associated with animal advocacy to its keyword blocking lists would be constitutional, it has a remedy. It can seek relief from this Court's injunction under Rule 60(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 60(b)(5); *Am. Council of the Blind v. Mnuchin*, 977 F.3d 1, 7 (D.C. Cir. 2020). In contrast, if NIH remains free to impose the same or a substantially similar keyword blocking scheme, Plaintiffs face significant hurdles to seeking relief. Because NIH has never publicized its keyword blocking lists, it will be difficult for Plaintiffs to learn of new keyword blocking practices related to animal testing, and even if Plaintiffs *did* discover this information, they would still be forced to bear all of the costs associated with bringing a new lawsuit. Equity requires a different result. This Court should ensure that NIH's practices respect the free speech rights of Plaintiffs and of the public on social media by adopting the Proposed Order in full.

## Conclusion

For the reasons stated above, this Court should: (1) Enter judgment on Plaintiffs' behalf; (2) Order that NIH's practice of blocking keywords associated with animal rights advocacy on the NIH Facebook Page and NIH Instagram Account is unconstitutional; (3) Order that NIH must remove the keywords described in paragraph 58 of the parties' joint stipulation, ECF No. 28, from

any keyword blocking or filtering list associated with the NIH Facebook Page and NIH Instagram Account; and (4) Order that NIH is enjoined from blocking, hiding, deleting, or filtering comments on the NIH Facebook Page and NIH Instagram Account on the basis that they advocate for animal rights or use phrases associated with animal rights advocacy.

October 11, 2024

Respectfully submitted,

/s/ Stephanie Krent
Stephanie Krent, *pro hac vice*
Katherine Fallow, *pro hac vice*
Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
stephanie.krent@knightcolumbia.org

*Counsel for Plaintiffs*

/s/ *Caitlin M. Foley*
Caitlin M. Foley, *pro hac vice*
Animal Legal Defense Fund
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
(707) 795-2533 ext. 1043
cfoley@aldf.org

*Counsel for Plaintiffs Madeline Krasno and Ryan Hartkopf*

/s/ *Asher Smith*
Asher Smith, *pro hac vice*
Ashley Ridgeway (application for admission forthcoming)
People for the Ethical Treatment of Animals
1536 16th Street NW
Washington, DC 20036
(202) 483-7382
AsherS@petaf.org

*Counsel for Plaintiff People for the Ethical Treatment of Animals, Inc.*