IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **People for the Ethical Treatment of Animals, Madeline Krasno, and Ryan Hartkopf,**<br><br>               Plaintiffs,<br><br>      v.<br><br>**Lawrence A. Tabak, in his official capacity as Director of the National Institutes of Health, and Xavier Becerra, in his official capacity as Secretary of the U.S. Department of Health and Human Services,**<br><br>               Defendants. | Civil Action No. 21-cv-2380 (BAH) |

**REPLY TO PLAINTIFFS' MEMORANDUM
REGARDING SHOW CAUSE ORDER**

      The D.C. Circuit narrowly held that, based on the record before it, certain social media keyword filters adopted by the National Institutes of Health ("NIH") were unlawful insofar as they were used to implement NIH's off-topic comment policy. Further, the only concrete injuries established by Plaintiffs in this case stemmed from those filters. Thus, under established remedial principles that Plaintiffs do not contest—*i.e.*, that relief must be limited to unlawful actions that injure the plaintiff—any relief here would have to be limited to the unlawful use of the relevant filters. NIH, however, has already deleted those filters, and so the Court need only enter judgment for Plaintiffs. Nothing further is needed to shield Plaintiffs from any imminent, irreparable harm that they have established.

      Nevertheless, Plaintiffs ask the Court to enter its broad Proposed Order which, among other things, would prohibit future, hypothetical content moderation actions by NIH, including

1

actions taken pursuant to an entirely new social media policy. In support, Plaintiffs principally argue that, in their view, those hypothetical future actions would also be unlawful in light of the D.C. Circuit's reasoning in this case and that Plaintiffs do not want to suffer the inconvenience of having to file a new lawsuit if NIH ever engaged in those other actions. Under settled precedent, however, none of those arguments justifies the unnecessary and overbroad relief Plaintiffs seek. The Court should not enter the Proposed Order.[1]

## Discussion

The parties dispute three provisions in the Proposed Order: (i) a proposed injunction requiring NIH to delete the offending filters, (ii) a proposed injunction prohibiting NIH "from blocking, hiding, deleting, or filtering comments on" NIH's Facebook and Instagram pages "on the basis that they advocate for animal rights or use phrases associated with animal rights advocacy" (the "Future Action Injunction"), and (iii) a proposed declaration that NIH's "practice of blocking keywords associated with animal rights advocacy on" its Facebook and Instagram pages "is unconstitutional" (the "Legal Statement"). *See* ECF No. 30-2. None of those remedial provisions is necessary or justified.

1.     The Court need not enter an injunction requiring NIH to delete the offending filters. NIH has already deleted those filters and so Plaintiffs can establish no irreparable harm warranting that injunction. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010) ("a permanent injunction is" appropriate only when "needed to guard against any present or

---

[1] Plaintiffs did not seek, and the Court did not grant, leave for Plaintiffs to file their "response" brief. The Court instructed "the parties" to file briefs by October 8, 2024, concerning whether the Court should enter the Proposed Order. *See* 9/30 Minute Order. Plaintiffs filed nothing on that date, instead submitting a belated and unauthorized response brief. Nevertheless, if the Court considers Plaintiffs' response brief, NIH respectfully requests that the Court consider this reply brief as well.

imminent risk of likely irreparable harm"). In response, Plaintiffs first argue that NIH has submitted no "actual evidence" confirming that the relevant filters were deleted. *See* Pls.' Resp. at 5-6. But NIH has represented, through undersigned counsel, that the filters have been deleted, and Plaintiffs are capable of testing that representation (*e.g.*, by trying to use the previously filtered terms when making comments on NIH's Facebook or Instagram pages). And it is unclear why any additional evidence would be necessary given that Plaintiffs do not appear to be asserting that the filters are still in place.

Plaintiffs then argue that an injunction requiring NIH to delete the relevant filters is needed to prevent NIH from adopting those filters again. *See* Pls.' Resp. at 6. But such an injunction, unlike the Future Action Injunction, would not preclude NIH from adopting any particular filter in the future. It would simply call for a one-time action that NIH has already undertaken: "remov[al]" of the relevant filters. ECF No. 30-2. To the extent that proposed injunction is construed to preclude NIH from adopting those filters again, the Court should not adopt it for the reasons it should not adopt the Future Action Injunction. *See infra* at 3-7.

2. The Court should not issue the Future Action Injunction or Legal Statement. To start, both are overbroad. Plaintiffs do not dispute that equitable relief must be limited to actions that (i) injure a plaintiff and (ii) are found unlawful. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."); *Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("the scope of injunctive relief is

3

dictated by the extent of the violation established"). Thus, here, to the extent any relief is appropriate, it can only target the relevant keyword filters insofar as they are used to implement NIH's off-topic comment policy. Plaintiffs have established no injury (current or impending) stemming from any other action by NIH. Additionally, the only NIH conduct that the D.C. Circuit found unlawful was NIH's use of the relevant keyword filters to implement its off-topic comment policy. *See People for the Ethical Treatment of Animals v. Tabak*, 109 F.4th 627, 636 (D.C. Cir. 2024) ("We . . . examine only" the "constitutionality of the off-topic restriction as implemented by the keyword filters"); *id.* at 630 (D.C. Cir. 2024) ("we hold that NIH's 'off-topic' restriction, as implemented through its keyword filters, is not reasonable"); *id.* at 637-38 ("NIH's off-topic policy, as implemented by the keywords, is . . . unreasonable"). The court did not conclude that any other keyword filters, or any other content moderation actions (*e.g.*, manual moderation actions), were unlawful. And even with respect to the filters at issue, the Court did not rule out the possibility that those filters, or comparable filters, may be justified if they are based on a different rationale and better record.[2] *See, e.g.*, *id.* at 638 ("we hold that NIH's off-topic restriction, *as currently presented*, is unreasonable" (emphasis added)).

The Future Action Injunction, however, sweeps well beyond NIH's use of the relevant filters to implement its off-topic comment policy; that injunction would, for example, forbid NIH from taking *any* moderation actions (including manual actions) concerning content that happens to "use phrases associated with animal rights advocacy." The Future Action Injunction is thus

---

[2] The D.C. Circuit's decision was based on certain flaws with NIH's off-topic comment policy; if NIH adopted the relevant filters in order to implement a new policy that did not have those flaws, the D.C. Circuit's decision would not render those filters unlawful. *See Tabak*, 109 F.4th at 637 (noting that the filters were unlawful because they implemented an off-topic comment policy that was "inflexible" and "fail[ed] to provide any definition of 'off-topic'").

4

overbroad. Further, to the extent the Legal Statement likewise applies to conduct that the D.C. Circuit did not find unlawful, it too is overbroad. Plaintiffs' arguments in response lack merit.

They first argue that although the D.C. Circuit's holding was limited to the improper use of the relevant filters, the court's *reasoning* may apply to certain other content moderation actions. Specifically, Plaintiffs argue that if NIH adopted other filters for, or took manual actions against, comments relating to animal testing, and justified those actions by referring to the off-topic comment policy the D.C. Circuit took issue with, then those moderation actions would likewise be unlawful based on the D.C. Circuit's reasoning. *See* Pls.' Resp. at 5-7. But there is no allegation that NIH will soon take any new actions to implement the relevant off-topic comment policy, and so Plaintiffs can establish no injury from, and thus cannot seek relief against, those hypothetical actions. *See supra* at 3-4. In any event, the Future Action Injunction would not be limited to content moderation actions taken to implement the relevant off-topic comment policy; it would generally bar actions taken against comments relating to animal rights advocacy *regardless* of how NIH justifies those actions. Thus, the Future Action Injunction is still overbroad.

Plaintiffs also argue that the Future Action Injunction appropriately prohibits NIH from ever re-instituting the relevant filters, even if NIH justified those filters with a new rationale and new evidence. In support, Plaintiffs note that, in their summary judgment papers, they disputed several potential rationales NIH could use to justify those filters. *See* Pls.' Resp. at 3. Thus, to Plaintiffs, NIH must now be eternally forbidden from adopting those filters based on *any* rationale. *See id.* But Plaintiffs cite to no precedent suggesting that the scope of relief must be based on what a plaintiff argues in its brief. To the contrary, relief must be limited to conduct that is found unlawful by a court, and here, as noted above, the only conduct found unlawful was

5

the use of the relevant filters in order to implement the relevant off-topic comment policy. *See supra* at 3-4.

Plaintiffs complain that, absent an injunction broadly prohibiting NIH from taking moderation actions against comments relating to animal testing, Plaintiffs would have to expend resources filing new lawsuits if and when those actions occurred. *See* Pls.' Resp. at 7-8. But that is a consequence of the narrow scope of the D.C. Circuit's holding and the undisputed limits on a federal court's remedial authority. *See supra* at 3-4. Plaintiffs would have to file new lawsuits because they would be challenging new agency actions that were not found unlawful in this suit. And this phenomenon—*i.e.*, a plaintiff having to file a new suit to challenge an agency action analogous to one previously found unlawful—is not uncommon. For example, if a court vacates a rule after finding that it is arbitrary and capricious in light of its rationale and administrative record, the agency involved could re-issue the rule based on a new rationale and administrative record. The plaintiff would then have to file a new suit if it wanted to challenge that new rule. The same is true if a court vacates a rule because it was impermissibly issued without a notice-and-comment process. Thus, there is nothing unusual or unjust about requiring Plaintiffs to file a new suit if they wanted to challenge some content moderation action NIH may take in the future.

Plaintiffs offer two additional responses to the overbreadth argument that can be quickly disposed of. They argue that that even if the Proposed Order is overbroad, the Court should still issue it because NIH can later ask the Court to narrow the order through Rule 60(b) relief if and when NIH wants to engage in some action that was needlessly covered by that order. *See* Pls.' Resp. at 8. Plaintiffs, of course, cite to no authority indicating that a court can enter improper relief simply because it can later undo that mistake by granting a Rule 60(b) motion. Plaintiffs also argue that they need an overbroad injunction because, if NIH does take some new action

6

against comments relating to animal testing, Plaintiffs may not know about it and thus may not bring suit to challenge it. *See* Pls.' Resp. at 8. But again, Plaintiffs cite to no authority suggesting that a court can improperly enjoin hypothetical conduct that was not found unlawful simply because, if an agency does engage in that conduct in the future, there is some chance the plaintiff may not know about it. In any event, to the extent NIH did later take some action against certain comments relating to animal testing—which, again, it has expressed no present plans to do— Plaintiffs may well learn about it just as they did with the filters at issue here: when they realized that their comments on the NIH's social media pages were hidden. Accordingly, the Future Action Injunction and the Legal Statement are overbroad, and the Court should not enter either remedy.

Finally, the Court should reject the Future Action Injunction because it is impermissibly vague. An "order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Here, the Future Action Injunction generally prohibits content moderation actions against comments that "use phrases associated with animal rights advocacy," but Plaintiffs offer no clear standard for determining whether a particular phrase is "associated" with animal rights advocacy. In response, Plaintiffs contend only that NIH knows of certain phrases associated with animal testing comments because NIH previously adopted filters for them. *See* Pls.' Resp. at 7. But even though NIH could likely identify some phrases that are obviously tied to animal rights advocacy, that does not mean it could identify *all* phrases that Plaintiffs may think are merely "associated" with that type of advocacy. Given the ambiguous terms of the Future Action Injunction, NIH would have no practical way of knowing the full range of content moderation actions that are barred by the injunction. This is yet another

reason why the Court should not enter the Future Action Injunction. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.").

## Conclusion

The Proposed Order is overbroad and vague. The Court should decline to enter it and should instead simply enter judgment for Plaintiffs. Nothing further is needed to address any injuries established by Plaintiffs in this case. If NIH were later to engage in any content moderation action that Plaintiffs might take issue with, they could file a new lawsuit and a court could then assess the lawfulness of that action in light of the rationale and record that NIH uses to defend it. This Court, however, need not prematurely resolve that hypothetical dispute now.

Dated:  October 16, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

*/s/ Kuntal Cholera*

KUNTAL CHOLERA
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Kuntal.Cholera@usdoj.gov

*Attorneys for Defendants*